**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) LOCAL 985, AFL–CIO, Petitioner,**

v.

**W. M. CHACE COMPANY, Respondent.**

**Civ. A. No. 28320.**

United States District Court
E. D. Michigan, S. D.

Dec. 21, 1966.

Bernard F. Ashe, Stephen I. Schlossberg, John A. Fillion, Jordan Rossen, Michael S. Friedman, Detroit, Mich., for petitioner.

Frederick B. Schwarze, Leonard A. Keller, Detroit, Mich., for respondent.

## OPINION

FREEMAN, District Judge.

This suit is brought by the petitioner Union pursuant to section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, to enforce an award stemming from an arbitration proceeding conducted in accordance with the provisions of a collective bargaining agreement between the parties.

Respondent Company manufactures thermostatic bimetals used in heating control instruments. Petitioner is the exclusive bargaining agent of respondent's employees. A strike of several months' duration at respondent's Detroit plant ended in April, 1965. During the strike, respondent had transferred some of its operations from Detroit to Puerto Rico. While these functions had been performed in Michigan, a group of women had been employed to carry them out. In the course of recalling laid-off employees after the strike concluded, respondent ordered to return to work a number of men who had less seniority than ten of these women. The ten females then took steps to invoke the grievance procedure described in the contract. The dispute eventually went to arbitration, at the conclusion of which the arbitrator made the following award:

"The grievants, in order of their seniority, shall receive the opportunity to perform eight jobs enumerated in the Opinion, pursuant to Article IV, Section 5 [of the collective bargaining agreement]. If they perform satisfactorily, they shall receive back pay from June 14, 1965 to date of reinstatement, less any compensation otherwise earned."

Respondent's refusal to abide by this award precipitated the present suit.[1] Petitioner filed a motion for judgment

1. Attorneys for respondent informed the Court on the occasion of the oral argument on these motions that after this petition for enforcement had been filed, seven of the grievants had been given trial employment. Three of the seven were, in respondent's judgment, unqualified and were discharged. Admittedly, the four grievants still employed have not been given back pay as ordered by the arbitrator. Article IV, Section 5, of the collective bargaining agreement authorizes trial employment.

on the pleadings; respondent countered with a motion to dismiss on the ground that Michigan statutory law and public policy make the award unenforceable. Both motions are the subject of this opinion.

The starting point of this discussion is United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), in which the Court held that an arbitrator's award must be enforced as long as it "draws its essence from the collective bargaining agreement." The pertinent portion of the instant collective bargaining agreement is Article IV, Section 4, which provides:

"(a) Seniority shall entitle an employee to preference over employees with later seniority dates in layoffs and reinstatement after layoffs.

"(b) Employees in the classifications of Electrician, Maintenance, Skilled Machine Hand, and Toolmaker, will not be able to exercise their seniority to displace employees in any other classification in connection with layoff, recall from layoff, job opening, temporary transfer, etc.

"(c) Employees in other classifications will not be able to exercise their seniority to displace employees in the above named classifications in connection with any layoff, recall from layoff, job opening, temporary transfer, etc.

"(d) A female employee in the Fabricating classification shall be able to exercise her seniority to displace an employee in the classifications named in (c) above, in connection with any layoff, recall from layoff, job opening, temporary transfer, etc., *where lifting and weight factor restrictions do not apply.*

"(e) As new jobs are created or present jobs are changed where the requirements to perform the full duties of these jobs *are not prohibited by law,* female employees as well as male employees will be permitted to occupy them." (Emphasis supplied)

It is not apparent whether the arbitrator's award was based on subsection (d), subsection (e), or a combination of both. However, it is clear from his opinion that he discussed the possibility that "lifting and weight factor restrictions" or the following statute prohibited female employees from holding certain jobs claimed for them by the petitioner.

The pertinent statutory language is found in M.S.A. § 28.824, C.L.1948, § 750.556 [P.A.1962, No. 37]:

"Any employer of labor in this state, employing both males and females, who shall discriminate in any way in the payment of wages as between sexes who are similarly employed, shall be guilty of a misdemeanor. *No female shall be assigned any task disproportionate to her strength,* nor shall she be employed in any place detrimental to her morals, her health or her potential capacity for motherhood. Any difference in wage rates based upon a factor other than sex shall not violate this section." (Emphasis supplied.) [2]

In addition to the legislation, reference is made in the arbitrator's opinion and in the briefs of counsel to a news release, dated June 17, 1942, issued by the Michigan Department of Labor and Industry. This provides in part:

"Women shall not be required to lift more than 35 pounds in the course of their regular work, nor shall they be required to carry more than 20 pounds while ascending or descending stairs."

The arbitrator decided that this release did not have the binding force of law. His conclusion is supported by a letter,

---

**2.** Although it is not clear from M.S.A. § 28.824 itself that conduct in conflict with the emphasized clause is a misdemeanor, this is the result at least by virtue of M.S.A. § 28.199, C.L.1948, § 750.9.

attached to petitioner's brief, from what is now the Michigan Department of Labor, in which the Assistant Director of the Bureau of Safety and Regulation indicates that his organization does not consider the contents of the release as law. The Court need not give its opinion on this point at this time.

The arbitrator discussed four different types of jobs. Only three kinds are important now because he found that the Union was not entitled to claim on behalf of a female employee one such job type. The remaining jobs are in the Metal Straightener (Strip) Department, the Metal Straightener (Coil) Department, and the Shipping and Receiving Department.

Briefly, petitioner grounds its argument for judgment on the pleadings on the following reasoning. The collective bargaining agreement, in Article IV, Section 4, subsections (d) and (e), says in effect that no woman should be given a job which she is prohibited from holding because of either the law or "lifting and weight factor restrictions." The arbitrator considered both the above-quoted statute and the aforementioned press release and concluded that neither the law contained in the statute nor the restrictions set out in the release prevented his making an award in favor of the Union. Therefore, the arbitrator based his award on the collective bargaining agreement as he understood it, with the result that this Court has no

choice, in light of the teaching of *Enterprise Wheel,* but to enforce the award.

█ The difficulty with this argument is that it fails to take account of a question not presented in *Enterprise Wheel,* but of crucial significance here. The threshold issue in this case is not whether the award was premised upon the essence of the agreement, but rather whether this Court can summarily order a party to arbitration to follow the dictates of the arbitrator when to do so may require him to commit the misdemeanor described in M.S.A. § 28.824. While it may be that as far as the construction of the collective bargaining agreement is concerned, the arbitrator was perfectly justified in finding that the hiring of the women grievants is not prohibited by law, i. e., the law insofar as it was expressly incorporated into the agreement, it does not follow that his finding makes it unnecessary for the Court to look beyond his opinion when confronted with a question of Michigan law—which, of course, this Court must respect if it is not in conflict with federal law—as it exists apart from the contract.[3] In looking beyond the opinion, the Court is not attempting to second-guess the arbitrator. It is actually concerned with the *lawfulness of its enforcing* the award and not with the *correctness of the arbitrator's* decision.

█ Although neither party has cited a case presenting a situation totally analogous to that here,[4] it is too plain for

3. Petitioner has not argued that M.S.A. § 28.824 is incompatible with the federal law which, because of Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1947), is applicable in this enforcement proceeding. Although petitioner's brief refers to the equal employment provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., it does not appear that petitioner is actually contending that M.S.A. § 28.824 has been superseded by the later federal statute. The Equal Employment Opportunity Commission, charged with the primary responsibility for enforcing these provisions, believes that state laws regulating female employment are not pre-empted as long as they

are reasonable. See 29 CFR § 1604.1(c). Certainly is it not unreasonable to limit female employment to jobs which are not disproportionate to female strength.

4. Petitioner has cited Local 483, International U. of E., R. & M. W., etc. v. Otis Elevator Co., 314 F.2d 25 (2d Cir. 1963), as standing for the proposition that a court must enforce an arbitration award even if there is a possibility that compliance will necessitate criminal conduct. In *Otis,* the company had discharged an employee who had been convicted of possessing gambling slips. His misconduct had occurred on company property. In opposing enforcement of an arbitration award directing reinstatement, the company argued that if it took the employee

argument that no court will order a party to do something, if in order to comply with the court's directive, he must commit a crime. This is so despite any protestations that the party contracted to do what it is said that he should be ordered to do. On the limited facts presented to the Court in connection with these motions, it is impossible to hold that respondent's assigning the work mentioned in the arbitrator's opinion to female employees does not as a matter of law constitute a violation of M.S.A. § 28.824. This proposition is valid without any reference to the 35-pound weight restriction mentioned in the Labor Department's press release; for, even if this release does not state the law, the statute does; and in order to determine whether the statute is prohibitive in this instance, the Court must know more about the nature of the employment of which the arbitrator's opinion speaks. Indeed, it may be necessary to consider the individual physical characteristics of the grievants in order to decide whether a particular occupation would require any of them to perform tasks which are, in the words of the statute, "disproportionate to her strength." All that is known at present is what can be gleaned from the arbitrator's brief description of the various jobs in dispute. From this it appears that employees working at two types of jobs, those in the coil and strip straightener departments, are expected to move, with varying degrees of frequency, racks and coils weighing a minimum of fifty pounds.

█ On this state of the record, judgment on the pleadings could be granted only if this Court were to consider itself bound by the arbitrator's finding, made in the course of construing the words "prohibited by law" contained in the collective bargaining agreement, that assignment to the grievants of the specified jobs is not prohibited by M.S.A. § 28.824. This it cannot do for two reasons. ·

█ First, the arbitrator was not commissioned to construe law *qua* law. The extent of his authority was to determine the meaning of the agreement. His jurisdiction to interpret the law was limited to rendering a legal construction only insofar as the agreement incorporated the law by reference. He was authorized to construe the law as though it were nothing more than a provision of the contract. In *Enterprise Wheel,* the Supreme Court, referring to the ambiguous arbitration opinion before it, observed (supra, 363 U.S. at 597, 80 S.Ct. at 1361):

> "It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, *which would mean that he exceeded the scope of the submission.*" (Emphasis supplied.)

Second, the arbitrator's opinion does not clearly show exactly under what conditions he felt that female employees could do certain jobs without causing respondent to violate M.S.A. § 28.824. His discussions of the tasks required to be performed by persons employed in the two straightener departments always conclude with the observation that if one female could not legally handle a particular facet of the work, several of them could. In other words, it is likely that the arbitrator based his ultimate conclusion that assigning women to these departments involved no illegality on an implied premise that enough of them would be directed to perform certain tasks so that no one of them could be said to have been assigned work "disproportionate to her strength."

Had the arbitrator's award expressly directed respondent not only to reinstate the women but also to take whatever

---

back, it could be charged, apparently, with permitting gambling on its premises. The court rejected this contention, not because it felt that the state criminal law could be overlooked, but rather because the court

found it "hard to imagine" how the simple act of reinstating the employee, whose conduct the company had clearly repudiated, could be the basis of criminal liability.

steps were necessary to arrange workloads so that no woman would have to do "disproportionate" work, it may well be that the award would be summarily enforceable. But this is not the case. The award actually made only directs reinstatement. Ordinarily this would seem to mean that respondent was instructed to recall the women and not that it was ordered to reinstate them and then to arrange their work schedules to be sure that no one of them was ever left stranded with a coil or a rack too large for her to move legally.

Even if the Court were willing to read into the award, as formulated, the implied condition that work assignments must be made in such a way that each woman would be called upon to exert no more effort than the law permitted, another difficulty would arise. On the basis of the arbitrator's opinion, it is impossible to say as a matter of law that an award with such an implied condition would have drawn "its essence from the collective bargaining agreement." Page one of the agreement contains the usual broad "management functions" clause. It reads:

> "The Union recognizes that the control of the manufacturing operations and process, and the working and shop conditions, are the function and responsibility of Management. * * *"

In suggesting that two women could work together on particular tasks, the arbitrator never mentioned this provision. The Court is not saying that the arbitrator could not have ordered doubling up in the face of the "management functions" clause, but rather that an arbitrator's award cannot be held to have been founded on a contract when, for all that appears, he never even read what seems to be a significant portion of the agreement.

In fact, a study of his opinion strongly indicates that the arbitrator, when speaking of doubling up, was only speculating about a way in which the grievants could lawfully be reinstated. In some Utopian context, such conjecture may be sufficient to evoke action. However, at this juncture, the Court is concerned only with what respondent has actually been ordered to do; and the record does not show satisfactorily that what respondent has been directed to do can legally be done.

■ Respondent asserts three reasons why the petition should be dismissed. The first presents the same difficulties inherent in petitioner's motion for judgment on the pleadings; for the record shows no more clearly that the assignments ordered by the arbitrator would give rise to a violation of M.S.A. § 28.824 than it does that they would not. The second is that the arbitrator acted capriciously, with the result that his award cannot be said to have been based on the contract. The argument here is that Article IV, Section 4, subsection (d), by containing a reference to weight restrictions, automatically incorporated the 35-pound limit mentioned in the Labor Department's press release. Therefore, since the arbitrator recognized that the women would be required to lift more than 35 pounds on occasion, he acted in total disregard of the contract in ordering their reinstatement. This argument is without merit. First, only parol evidence, not presently in the record, could equate the general reference in subsection (d) to weight restrictions with the Department's 1942 press release.[5] Second, it is not clear whether the arbitrator found subsection (d) or subsection (e) of section 4 applicable to the facts of the case, and subsection (e) speaks only of work assignments "prohibited by law." Respondent's third reason is based on Michigan public policy, of which it argues that the 35-pound limit mentioned in the press release is indicative. It appears

5. Although, as noted previously in this opinion, respondent relies upon the fact that the arbitrator seems to have equated the press release with the restrictions referred to in the collective bargaining agreement, it does not appear that respondent is prepared to admit that the arbitrator was necessarily correct in doing so.

that sometimes an arbitration award will be refused judicial enforcement on the ground that it is contrary to public policy. See Local 453, International U. of E., R. & M. W., etc. v. Otis Elevator Co., supra, 314 F.2d 25 (2d Cir. 1963). In the present record, however, there is no showing that today, a quarter of a century after the press release was issued, anybody follows its guidelines, or that any agency of the State has ever taken action to urge compliance with them in such a way that it could be said that the release defines Michigan public policy to the extent that the Court, applying federal law in this case, should take account of it.

Petitioner's motion for judgment on the pleadings and respondent's motion to dismiss the petition must be denied.

An Order shall be prepared and submitted in accordance with this opinion.