Marlborough Firefighters, Local 1714, I.A.F.F., AFL-CIO v. Marlborough.

MARLBOROUGH FIREFIGHTERS, LOCAL 1714, I.A.F.F.,
AFL-CIO & another[1] vs. CITY OF MARLBOROUGH.

Middlesex. March 8, 1978. — July 3, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Arbitration. Labor. Contract*, Collective bargaining contract. *Municipal Corporations*, Collective bargaining.

Even though a proposal as to "minimum manning" was outside the field of mandatory bargaining between firefighters and a city and was improperly included in the firefighters' offer in a "last and best offer" arbitration and in the arbitration panel's award, there was sufficient evidence in an action to enforce the award under St. 1973, c. 1078, § 4, to warrant findings that separation of the "minimum manning" provision could be accomplished without doing an injustice and that the valid portion of the award was enforceable. [595-600]

Upon appeal from a judgment enforcing a "last and best offer" award under St. 1973, c. 1078, § 4, this court looked to evidence supporting the award as a whole and would not search for supporting evidence item by item. [600]

CIVIL ACTIONS commenced in the Superior Court on January 14, 1977, and March 15, 1977, respectively.

The cases were consolidated and were heard by *Cratsley*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial court, on its own initiative, ordered direct appellate review.

*Alan I. Kaplan* for the defendant.

*Jonathan P. Hiatt* for the plaintiffs.

KAPLAN, J. Attempting to reach agreement on the terms of a labor contract covering the municipal firefighters for a period commencing July 1, 1975, Local 1714 of the Interna-

---

[1] The other plaintiff is Vincent Harpin, president and representative of the local.

tional Association of Firefighters, AFL-CIO (union) and the city of Marlborough went through the steps described in G. L. c. 150E, § 9 (labor relations: public employees; impasse procedure), which eventuated in an "impasse" and the appointment by the Board of Conciliation and Arbitration of a "fact finder" to resolve it. The fact finder pursuant to § 9 made findings and recommendations on April 25, 1976, but the impasse continued. The union then, availing itself of St. 1973, c. 1078, § 4 (legislation applicable to firefighters and police officers), petitioned the board to make an investigation. This led to the appointment of a three-member "arbitration panel" to conduct a "last and best offer" arbitration.[2]

Under the § 4 procedure the panel held hearings at which it received oral and documentary evidence and heard argument. At the conclusion of the hearings each party submitted a written statement containing its "last and best offer for each of the issues in dispute." The panel was empowered at this point to remand the dispute to the parties for further collective bargaining, but it did not do so. Instead, after consideration, in which it was charged by the statute with giving weight to ten stated factors, the panel proceeded, as required, to select one of the two offers: it was not authorized by the statute to propose a solution of its own but had to choose between the submissions of the parties. On December 15, 1976, a majority of the panel chose the union's offer. This under the law became the award, "final and binding upon the parties and upon the appropriate legislative body." Although not required by the terms of the statute as it then stood,[3] the panel through its chairman wrote an opinion justifying its choice.

[2] The statute of 1973 was upheld as constitutional in *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769 (1976); see also Annot., 68 A.L.R.3d 885 (1976). As to this type of arbitration, see generally Nelson, Final-Offer Arbitration: Some Problems, 30 Arb. J. 50 (1975) (citing other studies).

[3] Section 4 of the 1973 statute was amended by St. 1977, c. 347, § 2, among other things to require the panel to issue a written opinion. See also note 4 *infra*.

The city, dissatisfied with the panel's disposition, commenced an action in the Superior Court on January 14, 1977, based evidently on the theory that judicial review was available under the State Administrative Procedure Act (G. L. c. 30A, § 14). Later it moved to amend its complaint into the form of a petition for certiorari. Meanwhile the union on March 15, 1977, initiated an enforcement action under a provision of § 4, "Any determination or decision of the arbitration panel if supported by material and substantive [sic] evidence on the whole record shall be binding upon the parties and may be enforced at the instance of either party or of the arbitration panel in the superior court in equity." The union moved to consolidate the two actions; the city agreed; and the whole matter was heard by a judge in the Superior Court on the pleadings and a substantial record. The judge held that the only proper mode of review was by the action to enforce; accordingly, he denied the city's motion to amend its complaint and dismissed its action. On the merits, the judge held that a part of the award (corresponding to a part of the union's offer) must be struck as matter of law, but the rest comported with the standard of review as quoted above, and was to be enforced. From the ensuing judgment, entered August 8, 1977, the city appealed. We granted direct appellate review.

1. Among the items in the union's compendious offer were proposals as to "minimum manning" (the number of firefighters on duty on a tour or shift) and the use of call men (reserve civilians working part time). The city had taken the position that these topics were within the managerial prerogative and not properly part of an offer under § 4. On the other hand, the union contended that the matters bore such a relation to safety, working conditions, and so forth — statutory "factors" — as to be not only "mandatory" subjects of collective bargaining but also proper elements of a § 4 offer. The fact finder and the panel appeared to agree. However the judge below thought "last and best offer" arbitration was confined to the field of man-

datory bargaining, and the manning topic lay outside.[4] We have no occasion to examine the question, as the parties now go on the assumption that the manning item was improperly included in the offer and thus in the award.

So the question arose as to the effect of the partial invalidity of the award. The city thought the entire award must be denied enforcement; but if selective (or partial) enforcement would ever be justifiable it was not so here; and if the union's offer was not enforceable, it followed, according to the argument, that the city's offer must fall into place as the sole acceptable last and best offer and therefore as the award. The union reasoned that severance was reasonable and appropriate here; and it went on to make the more extreme suggestion that in all cases of partial invalidity the party whose offer had been selected by the panel should have the right to decide whether to accept severance or claim vacation of the entire award.

The judge analyzed the particular situation and concluded that separation could be accomplished, as he said, "without doing an injustice"; the "valid" part of the award — the bulk of it — was supported by the evidence under the standard of § 4, and should be enforced. We agree with the judge's approach and with the result.

We note that there are plenty of cases of grievance arbitration under labor contracts and of other staple arbitrations where courts have severed portions of awards thought to exceed the arbitrators' powers and have ordered enforcement of the rest. See, e.g., *Enterprise Wheel & Car Corp.* v. *United Steelworkers*, 269 F.2d 327 (4th Cir. 1959), rev'd in part on other grounds, 363 U.S. 593 (1960); *Swift Indus., Inc.* v. *Botany Indus., Inc.*, 325 F. Supp. 577 (W.D. Pa. 1971), aff'd, 466 F.2d 1125 (3d Cir. 1972); *Nuest* v. *West-*

---

[4] The judge supported his conclusion by citing *School Comm. of Boston* v. *Boston Teachers Local 66*, 372 Mass. 605, 613 (1977), where we indicated that under the terms of St. 1973, c. 1078, § 4, arbitration in police matters was limited to the subjects of mandatory bargaining. The pertinent statutory language as to firefighters was then rather different. Changes were introduced by the 1977 amendment.

375 Mass. 593                                                    597

Marlborough Firefighters, Local 1714, I.A.F.F., AFL-CIO v. Marlborough.

*inghouse Air Brake Co.*, 313 F. Supp. 1228 (S.D. Ill. 1970). This court has held in grievance arbitrations that reinstatement of the employee, being illegal, should be struck; but the remaining terms of the awards were enforced. *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 691 (1976). *Doherty* v. *School Comm. of Boston*, 363 Mass. 885 (1973). Quite close to the present case is an instance where severance was applied in the review of an "interest" arbitration, the type in which the arbitrator by his award formulates part or all of a labor agreement to come into force between the parties.[5] See *East Providence* v. *Local 850, Int'l Ass'n of Firefighters*, 117 R.I. 329 (1976).[6] See also *Ulene* v. *Murray Millman of Cal., Inc.*, 175 Cal. App. 2d 655 (1959); *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606 (1954), cert. denied, 348 U.S. 959 (1955).

Perhaps we find an approximation to the basic idea about severance in the observation of the Court in an old case, *McCormick* v. *Gray*, 54 U.S. (13 How.) 26, 39 (1851), that, where part of an award could not be enforced because of mistake of the arbitrator, the remainder "allowed to stand should appear to be in no way affected by the departure." We may surmise that the "affectation" that would call for vacation of the entire award could come about because of a functional relationship between the legal and illegal parts such that execution of one without the other would produce an untoward or unworkable result. So also the whole award

---

[5] See *School Comm. of Boston* v. *Boston Teachers Local 66, supra* at 606 n.4.

[6] In that case the arbitral panel awarded a five-year phased pension increase but its authority to bind the city was limited to one year. The court wrote (at 340): "In our opinion the entire award should not be invalidated. Where there is a contractual agreement to arbitrate, the generally accepted view is that even if an award exceeds the scope of the arbitration agreement it is not invalid in toto but only insofar as it is excessive, provided that the award is of such a character that the court can separate its parts without doing an injustice. . . . [Citations omitted.]

"We see no reason not to apply the above contractual rule to this case. In doing so, we find that there is no practical difficulty in severing the void part of the award and giving effect to the provisions relating to the first year of the contract."

may be threatened where it can be seen that the arbitrator's decision as to the legal part was influenced by his disposition of the part later found to be illegal.

There is no practical difficulty or awkwardness here in administering the salaries, vacations, or any of the other terms of the award, although resolution of the manning issue is excluded. Indeed the city implicitly suggests as much when it contends that last and best offers may not validly include manning provisions.

Nor can it be fairly said that the panel's judgment regarding the manning provision was so far related to its judgment on the other items, that the latter judgment would not have been reached if manning had been absent from the union's offer as it was from the city's. The contrary emerges from the record.

Although some twelve items were nominally in dispute, there was virtual agreement or little contest over all but salaries (including "longevity" pay for firefighters long in service) and manning. The fact finder had recommended a 14-17% general salary increase over a period of two years, with a schedule of lump sum payments for firefighters after five years' service. In its offer the union proposed a 16% general salary increase over two years, and longevity bonuses starting after eight years' service. The city offered an 11% salary increase over an eighteen-month period. As to manning, the fact finder recommended that the complement required to work per tour or shift be increased from ten to eleven, and that there be an addition of four to the total force; call men were to be phased out. The union's offer adopted the eleven on tour; call men were simply to be restricted to their current duties. The offer did not specify an addition to force though it might entail some addition.

"[D]ecisions and recommendations of the fact-finder" were a statutory "factor" to be given weight, and as to salaries and longevity pay the union's offer was nearer the fact finder's recommendations than the competing offer (and at the same time was more modest than the fact finder's proposals). In favoring the union's offer, the panel

expressly gave weight to the further statutory "factors" of "financial ability of the municipality to meet costs" and "comparison of wages" with those being paid in similar communities. Salaries offered by the city were adversely criticized as pitched too low, in a tie with a wage arrangement earlier agreed with policemen.

The changes in manning were explained by the fact finder essentially on grounds of need, if a satisfactory job of fire fighting was to be done; he also pointed to possible collateral benefits to the city, e.g., in relation to overtime. This appeared to coincide with the view of the panel.

While it is true that labor bargainers are willing to accept disadvantages that are offset by advantages, and in this sense offers are thought of as entities, the point to be emphasized here is that the salaries part of the award, following the union's offer, had a solid justification not reliant on that tendered for the manning part, and in the same sense the manning provisions were not reliant on the salaries. To put the matter in a different way, it seems clear that the panel would have chosen the union's offer even if manning had not been included; indeed there is no serious contention to the contrary. We may say that as the manning provisions represented advantages to the union, their omission would have produced a more modest offer perhaps more acceptable to the panel than the one in fact submitted.

In all the circumstances it would be speculative and unreal to credit the city's suggestion that, had the bargaining and the union's offer taken the correct line of omitting the manning items, the city would or might have proposed a different salary boost package resulting in an offer that could be preferred on the whole. After all, the city's actual offer assumed no change of manning. The suggestion that, if the panel had apprehended the illegality, it would have been bound to pass over the union's offer in favor of the city's, and that the panel's ignorance of the law should not change the result (all this regardless of the union's good faith), overlooks the fact that the panel was entitled to decline to act on either offer and to remand the dispute for

further bargaining, and in any event finds no basis in the wording of the statute and appears too strict to be plausible. We need not say whether a panel, noting that a term of an otherwise winning offer was impermissible, might strike it on its own authority. Nor need we deal with the union's more extreme contention mentioned above. It seems to us that the judge took the course of common sense and was right to say that the city could not rightly complain of an injustice.

2. The parties included in their respective offers a minor provision for special compensation for personnel with emergency medical training, but the city's statement added the particular that these payments were to go only to firefighters functioning in a capacity where the training would be relevant. Reading the term of the award adopting the union's offer on the point as extending to all the trained workers without regard to their functions, the city says the provision is irrational and should have been struck as not supported by evidence. On an examination of the entire record before us we are unable to say how the provision should be read, and we must refrain from any opinion as to whether there may be a case for reformation. It is, however, appropriate to remark that ordinarily the judicial review afforded by the statute looks to evidence supporting the award as a whole, not to a search for supporting evidence item by item. We do not disturb the judgment on this detail.

3. The judgment appealed from allows interest on the monies owed by the city under the award from the date thereof. It is apparently argued on the part of the city that no interest should be allowed because, under the ruling of the court, the city had no means of making an affirmative attack on the award and could only await an enforcement action and defend against it ("the City had no way to challenge invalidity of the award other than to appeal"). But it seems to us that if that circumstance has any bearing, it would, at most, justify a postponement of the commencement of the running of interest to the time of the initiation of the enforcement action (here a difference of three

months). The city chooses not to make any argument on this line, and again we are content to let the judgment stand.[7]

*Judgment affirmed.*

---

[7] We note that in *Glenn Acres, Inc.* v. *Cliffwood Corp.,* 353 Mass. 150 (1967), the court in a matter involving an arbitration under the uniform act (G. L. c. 251) allowed interest from the time of the application for enforcement of the award (although it was open to the other side to apply promptly to vacate the award). The court was applying the rule that interest on an unliquidated contract claim runs from the date of the writ. But see now G. L. c. 231, § 6C. We find a considerable body of authority elsewhere allowing interest from the date of an arbitral award. Thus in *Lundgren* v. *Freeman,* 307 F.2d 104, 112 (9th Cir. 1962), the court said: "The parties selected arbitrators, rather than a court, as the body that would, in the first instance, determine the amount due. This they had a right to do; this the law encourages them to do. It should be the rule, rather than the exception, that when arbitrators hand down an award the parties will comply with it, without the necessity of court proceedings, just as it is (or should be) the normal or usual result that parties comply with a judgment, without the necessity of resort to process or appeal." See also *Southeast Title & Ins. Co.* v. *Austin,* 202 So. 2d 179 (Fla. 1967); *Hackman* v. *American Mut Liab. Ins. Co.,* 110 N.H. 87, 94-95 (1970); *East India Trading Co.* v. *Halari,* 280 App. Div. 420 (Sup. Ct.), aff'd per curiam, mem. 305 N.Y. 866 (1953); *In re Reid,* 43 Misc. 2d 1020 (N.Y. Sup. Ct. 1964); *Meat & Allied Food Workers Local 248* v. *Packerland Packing Co.,* 411 F. Supp. 1280, 1284 (E.D. Wis. 1976).