COMMERCIAL UNION INSURANCE COMPANY *vs.* JOHN T.
BURNS, SR., & another.[1]

No. 89-1087.

Suffolk. January 14, 1991. - May 31, 1991.

Present: DREBEN, KASS, & LAURENCE, JJ.

*Practice, Civil*, Agreement for judgment. *Insurance*, Motor vehicle insur-
ance, Underinsured motorist, Consent to settlement.

In an action by an automobile insurer seeking a declaration that its stan-
dard Massachusetts automobile insurance policy and subsequent agree-
ments made by counsel absolved the insurer of further payment obliga-
tions on account of damages sustained by the insureds in an accident,
the judge correctly concluded that a settlement of a tort action between
the insureds and the tortfeasor that was incorporated in an agreement
for judgment established the insureds' damages and, since those dam-
ages did not exhaust the tortfeasor's policy, the insureds could not re-
cover from the underinsured motorist coverage in the policy issued by
the plaintiff insurer. [619-622]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 31, 1986.

The case was heard by *J. Owen Todd*, J.

*John T. Burns, Sr. (Alfred DiSciullo, Jr*, with him) for
the defendants.

*Edward T. Hinchey* for the plaintiff.

KASS, J. May a settlement incorporated in an agreement
for judgment fix the damages for purposes of deciding
whether — and how much — underinsured motorist insur-
ance applies? On the peculiar facts of this case, we think the
settlement did so fix the damages, and we affirm the judg-
ment below.

While crossing a street on May 17, 1977, John T. Burns,
Jr. ("John"), was hit by an automobile and injured. Phyllis

---

[1]John T. Burns, Jr.

Ring, the owner of the vehicle which struck John, carried bodily injury liability insurance to a limit of $50,000 per person. After bringing an action against the owner and driver[2] of the car involved in the accident, Mr. John T. Burns, Sr. ("Mr. Burns"), notified his own automobile insurer, Commercial Union Insurance Company (CU), that there would likely be a claim under the underinsured motorist coverage which Mr. Burns had purchased from CU to a limit of $100,000 per person;[3] i.e., Mr. Burns anticipated damages in excess of $50,000.

Conversation ensued between Mr. Burns, who is a lawyer, and Mr. Richard H. Pettingell, a lawyer who represented CU, culminating in a letter, dated November 9, 1979, from Mr. Pettingell to Mr. Donald Macksey, whom Mr. Burns (who worked in the same office suite) had retained to represent him and his son. That letter summarized matter understood by Mr. Pettingell to have been agreed with Mr. Burns concerning conduct of the case against the Rings. Most pertinently, the letter said:

> "In order that the subrogation rights of the Company . . . would not be waived or forfeited, Mr. Burns and I agreed that any judgment against either Albert or Phyllis Ring . . . will be conclusive, as between the Company and [John] on the issues of liability . . . and of the amount of damages to which [John] is legally entitled. . . .
>
> "[T]o the extent that any judgment rendered against Albert and/or Phyllis Ring is not covered by . . . insurance, [CU] will pay, to the limits of liability set forth in its policy with respect to underinsured motorists coverage (i.e. $100,000), the excess portion of that judgment . . . .
>
> "[S]omeone from this office will be present at the time of trial with you, and . . . the Company will have the

---

[2]The driver was the owner's husband.

[3]John could recover under Mr. Burns' policy as a member of Mr. Burns' household.

right to approve any settlement entered into between you on behalf of [John] and the Rings."

The underlying tort action was tried to a jury and came to an unsatisfactory conclusion for the Burnses: a judgment of $7,628.75. After an additur and a modification (whose origins are obscure), an amended judgment of $22,314.58 was entered. Still displeased, John appealed and won a reversal of the judgment. See *Burns* v. *Ring*, 19 Mass. App. Ct. 1112 (1985). As a second trial approached, the Burnses' new lawyer, Mr. Theodore Dennis, undertook to settle the case for $50,000. The Rings' insurer offered $42,500 and Mr. Dennis proposed to CU that it throw $7,500 into the pot to reach his settlement figure, an invitation CU twice declined. On May 20, 1986, Mr. Dennis by telephone asked Mr. Pettingell to consent to a $42,500 settlement with the Rings' insurer, a request in which Mr. Pettingell cheerfully acquiesced because it fell below the $50,000 limit of the tortfeasor's policy. CU appeared to be off the hook. Mr. Pettingell followed up with a letter of confirmation the next day to Mr. Dennis and, a few weeks later, with a letter to CU declaring the case closed and submitting his bill.

Mr. Burns, however, did not think the settlement fixed the damages and demanded of CU that the amount of damages incurred by John be arbitrated. CU responded with a complaint for a declaratory judgment that its insurance contract (a standard Massachusetts automobile insurance policy) and the subsequent agreements made by counsel absolved CU of further payment obligations on account of John's accident. A judge of the Superior Court so ruled and enjoined arbitration proceedings.

Under the terms of the policy issued by CU (a standard "plain English" form approved by the Commissioner of Insurance[4]), the amount of damages due the injured person

---

[4]Underinsured coverage has had a back-and-forth history in Massachusetts. At the time of the accident with which this case is concerned, underinsured motorist coverage was optional. See St. 1973, c. 380. In 1980, it became mandatory to the extent of minimum coverage required for bodily injury liability. See St. 1980, c. 532, § 1. In 1989, it became optional

was to be determined by agreement between the insurer and the injured person. Failing agreement, the insurer and injured person were to have the damages determined by arbitration. The trial judge found[5] that Mr. Pettingell's letter of November 9, 1979, reflected an agreement reached by Mr. Burns and Mr. Pettingell in their telephone conversation. A salient provision of that agreement was that a judgment against the tortfeasor would determine the damages owed John; i.e., the parties had agreed on the damages by incorporating an external measure which would bind them.

The agreement that a judgment against the tortfeasor would be conclusive of the injured person's damages was followed by an understanding that, upon payment of those damages by CU, "it would take possession of the execution issued on that judgment . . . for the purposes of enforcing and prosecuting its subrogation rights." There followed the paragraph stating that CU would have the right to approve any settlement. Given the juxtaposition of the agreement to be bound by a judgment with the reservation of settlement approval to CU, we think the reasonable interpretation to be given the parties' agreement is that they intended to be bound by a judgment resulting from an agreement for judgment as well as a judgment entered after a finding of liability and damages by a judge or jury. Cf. *Fishman* v. *Alberts*, 321 Mass. 280, 281 (1947). *Nantucket Exp. Lines* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 350 Mass. 173, 176 (1966). *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 (1983). To the extent resolution of the case against the tortfeasor established damages greater than $50,000 and less than $100,000, CU would pay that excess; if the damages were less than $50,000, CU need not pay anything.

---

again. See St. 1988, c. 273, § 46. The applicable provisions have at all times been in G. L. c. 175, § 113L. See generally *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 525 (1991).

[5]Such a finding of fact we, of course, accept unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203-204 (1986).

Such an understanding must have been apparent to the Burnses at the time they asked for CU's approval of the $42,500 settlement. At that juncture, they had not been able to negotiate an offer of the policy limits ($50,000) with the tortfeasor's insurer. The Burnses, by asking CU for a contribution to bring the over-all settlement to $50,000, had indicated that all parties would be bound by that figure. CU, by refusing to so contribute, conveyed its view that the damages did not exceed the primary policy. This was not a wholly astonishing position in light of the substantially lower jury verdict which had been returned (even with the additur) when the case had earlier gone to trial.

This conclusion is consistent with *MacInnis* v. *Aetna Life & Cas. Co.*, 403 Mass. 220 (1988). That opinion, based entirely on language in the insurance contract, held that a settlement with the tortfeasor (in that case to the limits of the tortfeasor's policy), without the consent of the underinsured motorist insurer, did not preclude a recovery under the uninsured motorist coverage unless the underinsured motorist carrier was prejudiced by the settlement. *Id.* at 222-223. Pages 227-228 of the *MacInnis* opinion prescribe how an underinsured motorist carrier should proceed if called upon to approve a settlement with a tortfeasor who has substantial assets. The procedure described is the requisite standard method based on policy language alone and presupposes that the settlement has been for less than the actual damages. The *MacInnis* case does not proscribe alternative arrangements tailored in particular circumstances by insured and insurer. More particularly, the *MacInnis* case did not deal with fixing the actual damages, which is the issue at the heart of this case. The judge found that CU had valuable subrogation rights which it surrendered when it approved the settlement, i.e., CU had changed position. By treating the settlement in this case as fixing the damages, CU, conformably with *MacInnis* at 222-223, avoids prejudice from its change of position. Cf. *Lumbermens Mut. Cas. Co.* v. *Mercurio*, 27 Mass. App. Ct. 111, 115 (1989).

For the reasons stated, the trial judge correctly ruled that the agreement for judgment established the Burnses' damages. Those damages did not exhaust the tortfeasor's policy. Accordingly, the Burnses could not recover from the underinsured motorist coverage in the CU policy.

*Judgment affirmed.*