ELEANOR MEYERS *vs.* BAY STATE HEALTH CARE, INC.

Essex. January 4, 1993. - April 6, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance,* Underinsured motorist. *Health Maintenance Organization. Lien.*

Underinsured motorist benefits received by a person injured in a motor vehicle accident are not subject to the statutory lien provided to health maintenance organizations by G. L. c. 111, § 70A, inasmuch as such benefits are paid as a result of a contractual obligation and are not "damages" subject to the provisions of the lien statute. [729-731]

CIVIL ACTION commenced in the Superior Court Department on December 17, 1990.

The case was heard by *Margot Botsford,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Sander A. Rikleen (Sally A. VanderWeele* with him) for the defendant.

*Mary P. Harrington* for the plaintiff.

*William T. McGrail & Dorothy Grandolfi Wagg,* for Massachusetts Hospital Association, Inc., amicus curiae, submitted a brief.

*James M. Kessler, Gerard A. Zitoli & F. Elizabeth Stoll,* for Health New England, Inc., & others, amici curiae, submitted a brief.

ABRAMS, J. The defendant, Bay State Health Care, Inc. (Bay State), appeals from a declaration that the proceeds the plaintiff, Eleanor Meyers, received from her underinsurance coverage, see G. L. c. 175, § 113L (1990 ed.), were not subject to the statutory lien provided to health maintenance organizations by G. L. c. 111, § 70A (1990 ed.). The judge

wrote a comprehensive memorandum of decision and declared that Meyers's underinsurance benefits were not subject to the statutory lien. We allowed Bay State's application for direct appellate review. We affirm the decision of the Superior Court.

Meyers brought an action for declaratory relief, seeking a declaration that her underinsurance benefits were not subject to the lien provided by G. L. c. 111, § 70A. Bay State counterclaimed, asking for satisfaction of its lien for all the costs it incurred in treating Meyers's injuries. The Superior Court judge allowed the plaintiff's motion for summary judgment and entered a declaration in her favor.

We set forth the facts from the judge's memorandum of decision: "Bay State is a non-profit Massachusetts corporation that operates a health maintenance organization (HMO). At all material times, Meyers was enrolled in Bay State's health care plan and entitled to receive health care services pursuant to the plan's terms.

"On January 2, 1988, while crossing Ocean Avenue in Marblehead, Massachusetts on foot, Meyers was struck by a motor vehicle driven by Julianne C. Wells (Wells). Meyers sustained serious injuries as a result of the accident, and Bay State furnished health services to treat these injuries. On September 19, 1988, Bay State asserted and perfected an HMO lien pursuant to G. L. c. 111, §§ 70A and 70B in the amount of $141,202.31 for health services furnished to Meyers as a result of the accident. Bay State twice updated its lien. Bay State's total statutory lien is now in the amount of $158,051.83.

"Meyers settled her tort claim against Wells for $25,000, which was the policy limit of Wells' automobile liability insurance with Liberty Mutual Insurance Company. In addition, Meyers was a named insured under two automobile insurance policies issued by Continental Casualty Company (CNA) to Meyers and to her husband, Marvin Meyers; each policy provided uninsured/underinsured benefits with a limit of $250,000 per person and $500,000 per accident. Meyers has settled her underinsurance claims with CNA. The

amount of $380,813.04 has already been paid pursuant to the above executed settlements.[1] Meyers' counsel have been fully paid for their services in connection with the above settlements. In a separate action, Meyers seeks recovery under a $2 million personal umbrella policy with Peerless Insurance Company."

The statute at issue is G. L. c. 111, § 70A.[2] Specifically at issue is whether the word "damages" in § 70A included underinsurance benefits within the scope of the lien. Bay State argues that the benefits Meyers received from her underinsurance coverage should be subject to the statutory lien. Bay State claims that underinsurance benefits are meant to provide the money that the tortfeasor cannot pay.[3] Therefore, Bay State asserts that these benefits should be treated in the same manner as the damages paid by the tortfeasor. In response, Meyers argues that the payments she received from

---

[1]According to the judge, "$149,990.00 has been placed in escrow pending the outcome of this action. (The escrow arrangement apparently preceded the latest update of Bay State's lien.)"

[2]In relevant part, G. L. c. 111, § 70A (1990 ed.), provides that "[a]ny person and any city or town maintaining a hospital licensed under the provisions of [§ 51], . . . which furnished medical or other services to any person injured in an accident not covered by the workmen's compensation act shall, subject to the provisions of [§ 70B], have a lien for the reasonable and necessary charges of such hospital, . . . and any health maintenance organization which has furnished health services, . . . shall, subject to the provisions of [§ 70B], have a lien for such benefits, upon the net amount payable to such injured person, his heirs or legal representative out of the total amount of any recovery or sum had or collected or to be collected, whether by judgment or by settlement or compromise, from another person as damages on account of such injuries. The lien of any attorney shall have precedence over the lien created under this section. The provisions of this section shall not apply to any such charges incurred subsequent to any such judgment, settlement or compromise."

[3]Bay State asserts that the courts of Massachusetts categorize the compensation from underinsurance coverage as damages. *Commercial Union Ins. Co. v. Burns*, 30 Mass. App. Ct. 617 (1991). That case, however, determined that an agreement between the injured individual and the insurer of the tortfeasor fixed the amount of damages of the injured individual. *Id.* at 620-621. It did not rule that benefits resulting from an underinsurance policy were damages. Instead, the Appeals Court held that the injured individual was not entitled to underinsurance benefits where the damages did not exceed the limits on the tortfeasor's policy.

her underinsurance coverage were not legal liabilities but were contractual obligations, for which she paid premiums. As such, she claims they are not damages and consequently are not subject to the lien. We agree.

We have defined damages as "the money payable by a tortfeasor who is liable for injuries caused by his tortious act." *Wincek* v. *West Springfield*, 399 Mass. 700, 702 (1987). In *Wincek*, the plaintiff was a police officer of the defendant town. While performing his duties, he was struck by an automobile and injured. He collected benefits pursuant to privately purchased underinsurance policies. The town claimed that, under the subrogation statute, G. L. c. 41, § 111F (1984 ed.), it was entitled to the proceeds of the underinsurance policies "to the extent that it has or will pay compensation to the plaintiff as required by G. L. c. 41, § 111F."[4] *Wincek* v. *West Springfield*, *supra* at 702. We said that the benefits were not payable to the town because "[t]he statute only subrogates the town to the employee's rights against the tortfeasor to the extent of the compensation the officer receives from the tortfeasor. 'A payment made in performance of a contractual obligation is not a payment of 'damages.' *State Farm Mut. Ins. Co.* v. *Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977)." *Wincek* v. *West Springfield*, *supra* at 702-703.

Bay State argues that *Wincek* is not applicable because the language in G. L. c. 41, § 111F, the subrogation statute, differs from that in G. L. c. 111, § 70A, the lien statute. Bay State claims that, in *Wincek*, we defined damages as we did

---

[4]The pertinent part of G. L. c. 41, § 111F (1984 ed.), and *Wincek* v. *West Springfield*, *supra* at 700 n.1, reads: "Where the injury causing the incapacity of a . . . police officer for which he is granted a leave without loss of pay and is paid compensation in accordance with the provisions of this section, was caused under circumstances creating a legal liability in some person to pay damages in respect thereof, either the person so injured or the . . . town . . . may proceed to enforce the liability of such person in any court of competent jurisdiction. The sum recovered shall be for the benefit of the . . . town . . . paying such compensation, unless the sum is greater than the compensation paid to the person so injured, in which event the excess shall be retained by or paid to the person so injured."

because we determined that the word damages was a limiting word, qualifying the statutory language regarding a "legal liability." *Wincek* did not so limit its discussion of damages. In that opinion we said that benefits resulting from underinsurance policies were not damages. While we agree that definitions are not static and that each word should be interpreted in relation to the general statutory scheme, there is no basis on this record for us to depart from the meaning given the word "damages" in *Wincek*.

Bay State also argues that the purpose of the subrogation statute in issue in *Wincek* differs from that of the lien statute. Bay State claims that the purpose of that statute is to "compensate police and firefighters who are injured on the job." *Wincek* v. *West Springfield, supra* at 704 n.3. Bay State claims that the purpose of the lien statute is to "reduce the cost of health care by permitting HMOs and others to recover the cost of treating injuries." We accept Bay State's premise that the purposes of the two statutes are not identical. Nevertheless, we cannot conclude that the underinsurance payments were damages.[5] The payments were not made as payment due from a tortfeasor. Meyers contracted with the insurance companies to pay her benefits in the event she was injured by an underinsured motorist. The benefits were paid as a result of that contractual obligation. The judge correctly declared that the benefits received from an underinsurance policy were not subject to a lien pursuant to G. L. c. 111, § 70A.

*Judgment affirmed.*

---

[5]After our decision in *Wincek*, the Legislature amended G. L. c. 41, § 111F, first par. We note that the Legislature did not amend the second paragraph, which concerns the issue of damages.