## Michael Dadak *vs.* Commerce Insurance Company.

No. 99-P-478.

Plymouth. September 14, 2001. - November 29, 2001.

Present: Lenk, Kaplan, & Doerfer, JJ.

*Arbitration,* Correcting error in award, Authority of arbitrator, Judicial review. *Statute,* Construction. *Insurance,* Arbitration, Workers' compensation insurance.

An arbitrator's original award that was modified by a Superior Court judge under G. L. c. 251, § 13(*a*)(1), as an "evident miscalculation," was, rather, the result of the arbitrator's adoption of a particular interpretation of a clause of an insurance policy and, consequently, this court reversed the judgment modifying the award, and ordered entry of a new judgment confirming the arbitrator's original award. [304-306]

Civil action commenced in the Superior Court Department on August 3, 1998.

The case was heard by *Patrick F. Brady,* J.

*Peter J. McCue* for the defendant.

*Kristopher S. Stefani* for the plaintiff.

Kaplan, J. While on duty as a Brockton police officer, the plaintiff Michael Dadak was injured when his cruiser was broadsided by a motor vehicle operated by Leonard Readus. The plaintiff, disabled for twenty-one weeks, received weekly benefits from Brockton in accordance with G. L. c. 41, § 111F, which amounted in all to $23,505.82. As noted in the margin, the statute provides non-standard workers' compensation.[1]

---

[1] General Laws c. 41, § 111F, provides in part: "Whenever a police officer . . . of a city . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity . . . . All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer . . . ."

The plaintiff settled his tort claim against Readus for $20,000, the liability limit for bodily injury under Readus's automobile insurance policy. The carrier for Readus happened to be the defendant, Commerce Insurance Company. The defendant paid the plaintiff $6,666.67 by check. It wrote a check for the balance, $13,333.33, to the joint order of the plaintiff and the city of Brockton, and the plaintiff then endorsed the check to the city. The city, after paying compensation to the police officer under § 111F, was subrogated (with protection by equitable lien, see *Gonsalves* v. *Commonwealth*, 27 Mass. App. Ct. 606, 609 [1989]; *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 609 & n.15 [2000]), in the amount of such paid compensation, to the plaintiff's recovery from the tortfeasor Readus[2]; the figure of $13,333 apparently represented a willing compromise and surrender of part of the lien (the $6,666.67) in the plaintiff's favor.

Dadak made a separate claim based on the "underinsured" provision of his insurance policy, also issued by Commerce, covering his privately owned car. His claim was submitted to binding arbitration. Plaintiff and defendant presented evidence before the arbitrator. The arbitrator found that the plaintiff's gross damages were $49,513.28 (including injuries, lost wages, and medical expenses). Under the policy terms, the defendant was allowed credits or offsets as follows: "We [Commerce] will reduce the damages [i.e., underinsurance benefits] an injured person is entitled to recover by: (1) The total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos . . . . (3)

Police officers are excluded from the ordinary Workers' Compensation Act, G. L. c. 152, § 69. Of § 111F, the Supreme Judicial Court has said this statute "is not a 'pure' workmen's compensation law, because, unlike G. L. c. 152, § 2, a police officer is not entitled to benefits merely because he was injured in the course of his employment: the officer must be injured through no fault of his own." *Wincek* v. *West Springfield*, 399 Mass. 700, 704 n.3 (1987).

[2]A provision of § 111F "mandates that a [city or] town be reimbursed for any amounts paid under § 111F to the extent that the legal liability of a third party who has paid damages has yielded additional relief to the injured police officer." *Wincek* v. *West Springfield*, 399 Mass. 700, 701 (1987). To be distinguished are payments pursuant to a contractual obligation, like underinsurance benefits, which are not captured by § 111F. See *Meyers* v. *Bay State Health Care, Inc.*, 414 Mass. 727, 731 (1993).

The amount paid under a workers' compensation law or similar law . . . ."

Under clause 1, the arbitrator found there was an offset of the $20,000 recovery from Readus's policy. But the arbitrator noted the parties differed in their interpretations of clause 3: the defendant contended the whole of the weekly benefits paid to the plaintiff — the $23,505.82 — should be offset, while the plaintiff contended the offset should be only $10,172.49, as the plaintiff had in effect returned $13,333.33 of the $23,505.82 to Brockton in reduction of the city's lien. The arbitrator, filing written findings and conclusions, accepted the defendant's interpretation of clause 3. The result was a net award to the plaintiff of $5,507.46 pursuant to the underinsurance provision.[3]

Within the twenty days from receipt of the award allowed for a claim of miscalculation of figures, see G. L. c. 251, § 9, the plaintiff asked the arbitrator to reconsider and add the $13,333.33 to the award, for a total of $18,840.79. The arbitrator replied, standing by his interpretation of clause 3: "a credit for 'the amount paid under a Workers' Compensation law or similar law[,]' i.e. $23,505.82[,] plus 'the total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos' shall be deducted from the gross award made by me for Mr. Dadak."

The plaintiff timely commenced the present action in Superior Court, seeking modification of the award. This was based on the statutory grounds that "there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award," G. L. c. 251, § 13(*a*)(1). After a hearing, the judge ruled there was such an "evident miscalculation" and ordered the entry of a judgment in the plaintiff's favor for $18,840.79. The defendant appeals from the judgment.

The judge mistook the meaning of the statutory phrase.[4] The "evident miscalculation of figures" referred to is one which

---

[3]The parties agree the net award was short $500 and should be $6,007.46. This resulted from an arithmetical mistake in subtracting the total offsets ($43,505.82 from the gross damages of $49,513.28).

[4]Our arbitration statute is based on the 1955 version of the Uniform Arbitration Act. As revised in 2000, the uniform act permits the modification or cor-

arises in the working out in mathematical terms of an agreed or assumed standard or principle. That was not the present case. Here there was disagreement about the standard or principle itself — the interpretation of clause 3 — and the award reflected the arbitrator's adoption of one interpretation rather than the other.[5]

Illustrative of evident miscalculation in the sense of the statute is the case of *Ciampa* v. *Chubb Group of Ins. Cos.*, 26 Mass. App. Ct. 941, 941 (1988). It was agreed the plaintiff was entitled to the present value of future lost wages, $150 per week for 925 weeks at an interest rate of twelve percent. Upon review of the arbitrator's calculation pursuant to § 13(*a*)(1), a judge of the Superior Court suggested that the parties inform the arbitrator of an obvious error in his calculation of present value. The arbitrator modified the award accordingly, and the modification was held proper under § 13(*a*)(1): a mathematical mistake was "evident" from the original award. We cite in the margin similar instances of evident mathematical error.[6]

In contrast are instances like the present case, where arbitrators' awards were attacked for supposed miscalculation, but it turned out the awards stemmed, instead, from the arbitrators'

---

rection of an award if there was an "evident mathematical miscalculation." Uniform Arbitration Act § 24(*a*)(1), 7 U.L.A. (Pt. I) 43 (Master ed. Supp. 2001). The Federal Arbitration Act, 9 U.S.C. § 11(*a*), uses the expression "an evident material miscalculation of figures."

[5]As the challenged language in this standard Massachusetts automobile insurance policy is "controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). See *Gomes* v. *Metropolitan Property & Cas. Ins. Co.*, 45 Mass. App. Ct. 27, 31 (1998). This, however, is legal doctrine not binding on the arbitrator.

[6]See *Atlantic Aviation, Inc.* v. *EBM Group, Inc.*, 11 F.3d 1276, 1284 (5th Cir. 1994) (failure to award sums owed under contract "was in essence a clerical error which may be corrected without disturbing the merits of the arbitrators' decision"); *Laurin Tankers America, Inc.* v. *Stolt Tankers, Inc.*, 36 F. Supp. 2d 645, 651 (S.D.N.Y. 1999) ("arbitrators' error in transforming an undisputed sea passage [fuel] consumption amount into a daily [fuel] consumption amount may be regarded as clerical," warranting award's modification); *Ramonas* v. *Kerelis*, 102 Ill. App. 2d 262, 274-275 (1968) (arbitrator's miscalculation in computing damages was remediable).

adoption of particular substantive positions.[7] It need hardly be noted that awards so arrived at, whether perceived in their results to be sensible or not, fair or unfair, are impregnable "[s]hort of fraud, arbitrary conduct, or significant procedural irregularity." *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc.,* 26 Mass. App. Ct. 132, 135 (1988). See G. L. c. 251, § 12(*a*)(1)-(5). We are not led into a discussion of the soundness or wisdom of the instant arbitrator's decision about the proper interpretation of clause 3.[8] "We are thus bound by the arbitrator's findings and conclusions in this case, no matter the extent to which we may believe that they are 'grossly erroneous.' " *Lynn* v. *Thompson,* 435 Mass. 54, 62 (2001), quoting from *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 390 (1973). The judgment is reversed, and a new judgment shall enter confirming the arbitrator's original award.

*So ordered.*

---

[7]See *Hough* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 757 F. Supp. 283, 289 (S.D.N.Y. 1991) (modification sought under guise of alleged miscalculation "would affect the substantive rights of the parties and reflects an attempt to revisit the merits of the arbitrators' award"); *School City of E. Chicago, Ind.* v. *East Chicago Fedn. of Teachers, Local No. 511,* 622 N.E.2d 166, 169 (Ind. 1993) ("the school city quarrels not with the mere application of mathematical operations but with the arbitrator's determination as to the primary issue of the union's claim"); *Tretina Printing, Inc.* v. *Fitzpatrick & Assocs., Inc.,* 135 N.J. 349, 360 (1994) ("Although we cannot determine from the face of the award whether the arbitrator erred in his dealing with the retainage . . . any such error does not constitute a mere 'miscalculation' and is by no means 'evident' "); *Carolina Va. Fashion Exhibitors, Inc.* v. *Gunter,* 41 N.C. App. 407, 413 (1979) (party's argument was an attempt to show a misinterpretation of evidence rather than an evident miscalculation of figures).

[8]In passing, the plaintiff suggests the arbitrator's inclusion of the full $20,000 tort recovery in the offset under clause 1 of the underinsurance provision is correctable as an "evident mistake in . . . description" under G. L. c. 251, § 13(*a*)(1). Here, as before, a matter of contract interpretation was decided against the plaintiff by the arbitrator: whether the $13,333.33 check made jointly payable to the city of Brockton and the plaintiff was part of "[t]he total amount collected from [Readus's] liability insurance" within the meaning of clause 1.