MASSACHUSETTS HIGHWAY DEPARTMENT & another[1] *vs.*
PERINI CORPORATION & others.[2]

No. 09-P-2052.

Suffolk. November 9, 2010. - May 9, 2011.

Present: COHEN, MILLS, & HANLON, JJ.

*Arbitration,* Authority of arbitrator, Award, Damages. *Damages,* Interest.
*Interest. Governmental Immunity.*

In the context of an action seeking to vacate two arbitration awards in favor
of the defendants (joint venturers who sought additional compensation
from the plaintiffs in connection with work the defendants had performed
on the plaintiffs' public construction project), this court affirmed the
judge's confirmation of the awards to the extent that they required the
plaintiffs to pay postaward interest, where provisional interim funding that
was already paid by the plaintiffs under the construction contract and was
in the defendants' possession did not constitute timely payment of the
award in full, and thereby stop the accrual of postaward interest, without
the plaintiffs converting the interim funding to final payment through al-
location or paying the defendants with new monies that were free from all
contractual restraints. [434-439]
In an action seeking to vacate two arbitration awards in favor of the defend-
ants (joint venturers who sought additional compensation from the plaintiffs
in connection with work the defendants had performed on the plaintiffs'
public construction project), the plaintiffs, who were public entities, failed
to identify a well defined and dominant public policy, ascertained from
laws and legal precedents, that was offended by that portion of an arbitra-
tion award ordering them to pay postaward interest [439-442], and there
was no merit to the plaintiffs' contention that the Commonwealth's explicit
consent was required to impose liability for such an award against a public
entity [442-444], or their contention that, by incorporating G. L. c. 30,
§ 39G, into the underlying public construction contract, they indicated
their consent to pay penalty interest only pursuant to that statutory pay-
ment scheme [444-445].
This court saw no basis, in law or equity, for the interest rate set out in G. L.
c. 30, § 39G, or the prohibition on interest therein, to curtail an arbitration
panel's authority to set the interest rate or to award compound interest on
disputed amount resolved by arbitration against a public entity. [445-446]

[1]Massachusetts Turnpike Authority.

[2]Kiewit Construction Company, Inc., and Jay Cashman, Inc.

A Superior Court judge hearing an appeal from an arbitration award properly added prejudgment interest to the entire amount of the arbitration award. [446]

CIVIL ACTIONS commenced in the Superior Court Department on June 13 and December 30, 2005.

The cases were heard by *Ralph D. Gants*, J.

*Thomas H. Hayman*, Special Assistant Attorney General (*James A. Sweeney*, Assistant Attorney General, & *Francis R. Powell*, Special Assistant Attorney General, with him) for the plaintiffs.

*Joel Lewin* (*Michael D. Healan* with him) for the defendants.

HANLON, J. This appeal concerns an arbitration panel's award of postaward interest on amounts owed to a general contractor for work on a public construction project. The Massachusetts Highway Department and Massachusetts Turnpike Authority (collectively, CA/T), filed these actions, later consolidated, seeking to vacate two arbitration awards in favor of Perini Corporation, Kiewit Construction Company, Inc., and Jay Cashman, Inc. (collectively, PKC), joint venturers, in connection with work PKC performed on the Central Artery/Tunnel project (project) in Boston, under the parties' 1995 public construction contract (construction contract). CA/T subsequently moved to dismiss the action as moot, arguing that CA/T already had paid the awards on time, by means of interim funding provided to PKC over the course of the work, and that no postaward interest was due. CA/T also raised issues of equity, public policy, and sovereign immunity in opposing confirmation of the award. For the reasons laid out below, we affirm the arbitration awards in all respects.

*Factual background.*[3] The matter before us arises in connection with PKC's claims for additional compensation, or change proposals, in two of several such disputes between the parties that were submitted to arbitration.[4] The construction contract

---

[3]For additional background regarding the project and prior arbitration proceedings, see generally *Massachusetts Hy. Dept. v. Perini Corp.*, 444 Mass. 366 (2005).

[4]From time to time, during the course of the project, PKC sought payment

originally provided for nonbinding resolution for disputed claims, but in March, 1999, the parties executed a dispute resolution agreement (1999 agreement), whereby they agreed to submit disputes regarding certain identified claims, including the claims involved here, to binding arbitration before a disputes review board (DRB). As to the identified claims, the 1999 agreement was to "supercede and/or supplement" the dispute resolution provisions of the construction contract; the 1999 agreement expressly granted "the exclusive authority to adjudicate any and all such disputes" to the DRB.

At issue in this appeal are DRB orders 11A and 16, both of which include an award of postaward interest on amounts not paid within sixty days of the awards. Pivotal to the dispute is certain interim funding paid by CA/T to PKC over the course of the project. According to the record, CA/T modified the construction contract on occasion to provide PKC with interim funding, i.e., provisional payments for change proposals for which PKC had incurred costs, but for which no final agreement about payment had been reached. The time between PKC's completion of the work and final agreement regarding payment sometimes took several years; the interim funding provided PKC with money to operate, pending final payment.

CA/T provided the interim funding by making modifications to the construction contract.[5] The record indicates that, as the parties reached agreement concerning the amounts that were

---

for additional costs through change proposals, which were requests for a formal change order to amend the construction contract to reflect changes in the work, price, or time. The claims involved here are referred to as impact claims, that is, claims for additional compensation due to extensions and delays in the project.

[5]Pursuant to contract modification 507 (Mod 507), part IA, CA/T provided $13.1 million to PKC as "an interim funding amount for payment of Direct Costs already incurred by the Contractor for changes for which an interim determination of entitlement has been made." Mod 507, part IA, also provided that the interim amount was "subject to adjustment by" CA/T and that "[t]his amount may be modified upward or downward by [CA/T] in a subsequent Modification." The modification also stated: "This shall not be considered as a determination of merit for all such Change Proposals by [CA/T]; and [CA/T] reserves all defenses, substantive and procedural which it may have to entitlement or quantum on any given Change Proposal."

On December 22, 1998 and April 16, 1999, CA/T added $13.2 million to the interim funding, pursuant to Mod 507, parts IC and ID, for a total of $26.3

owed for the various change proposals, CA/T allocated the funds it had previously paid to PKC on an interim basis to the agreed-upon change proposals. Once allocated, the payments became final and were no longer subject to CA/T's ability to make upward or downward adjustments or to make deductions against future payments. As of January, 2004, however, $20,089,149 of interim funding, previously paid to PKC, remained unallocated to specific change proposals.

*Arbitration proceedings.* In deciding the parties' various disputed claims involving payment for change proposals, the DRB issued five orders between August 31, 2001 and December 2, 2005, and awarded PKC a total of $56,529,000 in additional payments. All five awards provided for postaward interest. Three of the orders, DRB orders 3, 5, and 10, were confirmed in Superior Court and affirmed on appeal, and are not at issue here.[6]

On May 13, 2005, the DRB issued order 11A, awarding PKC the amount of $10,763,000, and providing that "interest should be added to the . . . Award Amount at the rate of nine percent (9%) compounded per annum for any delay in payment beyond sixty (60) days after the date of the Award." On December 2, 2005, the DRB issued order 16, awarding PKC the amount of $12,226,000, and again providing for postaward interest at nine percent, compounded annually, for any delay in payment. In 2008, CA/T allocated sufficient amounts from the interim funding previously paid to PKC, pursuant to modification 950, IG and IH, to pay the award amounts in orders 11A and 16. However, CA/T did not allocate funds to cover postaward interest for either award.

million in advance payments made to PKC. Mod 507, part ID, provided that "[a]ny downward adjustment will be immediately applied as a credit against any funds due [to PKC]."

On January 16, 2003, CA/T issued another modification, 950 IA (Mod 950), to provide further interim funding in the amount of $25 million. Together with an additional $1.5 million that had been transferred to PKC in April, 1999, the total interim funding transferred to PKC through 2003 was $46,589,149.

[6]Orders 3 and 5 were affirmed by the Supreme Judicial Court on May 26, 2005, and order 10, by this court, on May 30, 2006. See *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 367 (2005); *Massachusetts Hy. Dept.* v. *Perini Corp.*, 66 Mass. App. Ct. 1109 (2006).

*Judicial review.* In motions before the Superior Court, CA/T did not contest the amounts of the underlying arbitration awards 11A and 16, but argued that no postaward interest was due because the awards had been paid in full and on time, by virtue of the interim funding. CA/T also challenged the award of postaward interest on sovereign immunity grounds, maintaining that CA/T's specific consent to postaward interest was needed to impose liability for such an award on a public entity. Finally, it argued that inclusion of compound interest as part of the awards was contrary to applicable statutory provisions governing interest on late payments by the Commonwealth.

The judge confirmed orders 11A and 16 to the extent they required CA/T to pay postaward interest, but imposed a different interest rate, the rate established by G. L. c. 30, § 39G, and ruled that the award of compound interest was contrary to the controlling statute. Both parties appeal.

*Discussion.* a. *Interim funding.* CA/T does not appear to challenge the general proposition that an arbitrator has the authority to award postaward interest. "An arbitrator's award of interest, when made as a component of an award, is an integral part of the total remedy that he fashions and, as such, is not subject to the statutory provisions which apply to court-awarded interest on contract claims." *Blue Hills Regional Dist. Sch. Comm.* v. *Flight,* 10 Mass. App. Ct. 459, 472 (1980), reversed in part on other grounds, 383 Mass. 642, 644 (1981) ("For the reasons given by the Appeals Court, we uphold the power of the arbitrator to commence the accumulation of interest"); *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.,* 35 Mass. App. Ct. 204, 207 (1993). The Supreme Judicial Court has upheld postaward interest on arbitration awards as a means of encouraging compliance. See *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 717-718 (1978).

CA/T, however, argues that it owes no postaward interest on the amounts awarded in DRB orders 11A and 16 because it paid PKC in full, within the time ordered by the DRB, by way of the interim funding that was already in PKC's possession. The question, then, is whether the interim funding constituted final and timely payment of the award amounts.

As an initial matter, the parties dispute the appropriate standard

of review. CA/T argues that the judge, and not the DRB, decided, as a matter of law, that the interim funding did not constitute final payment of the awards, and hence our review of that ruling should be de novo. PKC counters that the significance of the interim funding for purposes of preaward and postaward interest was argued to, and decided by the DRB, and thus our review of the arbitrator's award of postaward interest is limited to the factors set out in the Massachusetts Uniform Arbitration Act, G. L. c. 251, § 12. Among those factors, § 12(a)(5), inserted by St. 1960, c. 374, § 1, provides that "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

After review of the record, we are satisfied that the DRB decided the issue whether the interim funding constituted final payment of the awards when it ordered postaward interest. The merits of that decision are not revisited on appeal. *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 67 Mass. App. Ct. 702, 705 (2006), citing *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 228 (2001).[7] We are strictly bound by the DRB's findings and legal conclusions, and "[a]bsent fraud, errors of law or fact are not sufficient grounds to set aside an award." *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). With respect to awarding damages, so long as the arbitrator "do[es] not overstep the limits of the issues submitted to [him], a court may not substitute its judgment on the matter." *Softkey, Inc.* v. *Useful Software, Inc.*, 52 Mass. App. Ct. 837, 839 (2001), quoting from *Lawrence* v. *Falzarano*, 380 Mass. 18, 28-29 (1980).

---

[7]The standard is well established. "A matter submitted to arbitration is subject to a very narrow scope of review." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). In essence, courts inquire into arbitration decisions "only to determine if the arbitrator exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.' " *Ibid.*, quoting from *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985). "An arbitrator exceeds his authority by granting relief beyond that to which the parties bound themselves . . . or by awarding relief prohibited by law." *Lynn* v. *Lynn Police Assn.*, 455 Mass. 590, 596 (2010), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, *supra*.

On the other hand, the judge made certain rulings, based on the DRB's findings and legal conclusions, in order to determine the manner in which CA/T could satisfy the awards. Our review of a judge's decision to confirm an arbitration award is de novo, since we have before us the same record as the judge. *Cybulski* v. *Vaiani,* 75 Mass. App. Ct. 382, 384 (2009).

Viewing DRB orders 11A and 16 together, it becomes apparent that the DRB treated preaward and postaward interest differently; that is, it found that the provisional nature of the interim funding satisfied the purposes of one and not the other. To place orders 11A and 16 in context, we begin with DRB order 10. In order 10, the DRB explained the effect of interim funding on final payment of that award as follows:

> "No Offset Taken For Interim Funding Payments: The board has made no reduction in the Award Amount to account for Interim Funding made by CA/T for underpinning. The total amount of final payment (if any) made by CA/T for [change proposals] listed by PKC in its Presentation Document, 'Allocation of $26.3M Interim Funding to Underpinning Changes' (attached) shall be deducted from CA/T's final payment of the Award Amount stated under (8) below."

From this passage and the supporting documents, we understand the DRB to mean that no offset in the award amount would be made on account of the interim funding previously paid to PKC, but that any final payment made by CA/T, allocating interim funding to specific change proposals, should be deducted from the award amount.

We turn to order 11A, the first of the two orders on appeal here. In order 11A, the DRB expressly deferred a determination regarding preaward interest so as to "consider the Parties' positions including consideration of the effects of any advance/interim payments made to the contractor." At the same time, the DRB ordered postaward interest on the award amount if not paid within sixty days.

The DRB returned to the issue of interim funding in order 16, the second order on appeal. With respect to interim funding and preaward interest, the DRB ruled that "with payment of the

Awards as stipulated in all previous orders together with this Order, no further compensation is due the Contractor on account of the matters adjudicated by this Board." Again, the DRB ordered postaward interest on the award amount if not paid within sixty days. When the language in order 11A expressly deferring a decision on preaward interest is viewed together with order 16, it is evident that the DRB considered the issue of interim funding in ameliorating PKC's costs pending claim resolution and decided that an award of preaward interest was not necessary to compensate PKC for any loss. Hence, in the DRB's view, the interim funding, though provisional, satisfied the purposes of preaward interest; by contrast, the DRB's award of postaward interest remained.

On January 27, 2006, at PKC's request, the DRB issued a clarification, in essence confirming its determination that the interim funding did not satisfy final and timely payment of the award amounts. When specifically questioned by PKC whether the DRB intended by order 16 to offset any of the interim funding against the award amounts for purposes of postaward interest,[8] the DRB responded that full payment of each award "shall include Post-Award Interest in addition to the Award Amount, if payment is made after the due-date stated in the Award." Thus, in addressing whether CA/T's interim funding to PKC satisfied final payment of the awards, the DRB reiterated that neither the order 16 award nor prior awards were considered paid by virtue of the interim funding, and that postaward interest would be owed on award amounts not paid by the date ordered.

CA/T insists that the precise issue whether the interim funding constituted final payment of the awards was not before the DRB and was only decided later by the judge. On the contrary,

---

[8]PKC's inquiry, in relevant part, was posed as follows: "With respect to pre-award interest, the DRB ruled that 'with the payment of the Awards as stipulated in all previous Orders together with this Order,' no further compensation is due. PKC interprets payment of 'the Awards as stipulated' to mean the prior awards with all post-award interest up to the date of payment of those awards (and the Order 16 award). PKC requests confirmation of this interpretation or, if its interpretation is incorrect, clarification of what is meant by this phrase, because the DRB heard evidence and argument on whether CA/T's interim payments should offset any pre-award or post-award interest on the DRB Orders."

the record clearly establishes that the parties raised with the DRB the issue regarding the significance of the interim funding for purposes of preaward and postaward interest, and we read the DRB's orders 10, 11A, and 16, together with the clarification, as indicating that the interim funding did not constitute final payment of the awards so as to stop the accrual of postaward interest. The DRB was apprised of the interim funding and the circumstances under which those payments were made, and having expressly stated that it would consider the issue of offset with respect to the interim funding, the DRB determined that no preaward interest was due. By implication, had the DRB viewed the interim funding as sufficiently final to satisfy payment of the awards, we are convinced that the DRB would have said so, as it did with preaward interest; in addition, had that been the case, its express award of postaward interest, and reiteration of that award in its clarification, would have been superfluous.

The DRB's determinations in this regard "are impregnable 'short of fraud, arbitrary conduct, or significant procedural irregularity.' " *Dadak* v. *Commerce Ins. Co.*, 53 Mass. App. Ct. 302, 306 (2001), quoting from *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 135 (1988). It was within the DRB's authority to construe the significance of the evidence, including the parties' contracts and CA/T's payment practices, in deciding that the interim funding did not satisfy final payment of the amounts owed to PKC for the disputed claims. See *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc., supra.*

Nevertheless, in orders 11A and 16, the DRB did not specifically explain the manner in which CA/T might satisfy the awards or what actions were required to render the interim funding final, and that issue was taken up by the judge. Based on the distinction drawn by the DRB between offset for interim payments for purposes of preaward and postaward interest in orders 11A and 16, and as further explained in the clarification, the judge determined that, in order to satisfy payment of the awards, CA/T was required to convert the interim funding to final payment through allocation to specific change proposals. Once allocated, the judge reasoned, CA/T could neither seek to rescind the interim funding nor withhold amounts against future pay-

ments to PKC pursuant to the contract modifications, and accordingly, the funds would belong to PKC and be deemed final payment. In the alternative, the judge ruled that CA/T could satisfy the awards with new monies.

We concur. Considering the record as a whole, the only reasonable interpretation of the DRB's orders 11A and 16 is that, to make the interim funding final and thus stop the accrual of postaward interest, it was necessary for CA/T to pay the award amounts with funds that were no longer subject to CA/T's control. So long as CA/T had the contractual right to reconsider PKC's entitlement to be paid, to make adjustments in the amounts already paid, or to deduct amounts against future payments, final payment of the award amounts was not effectuated in accordance with the DRB's orders.

Contrary to CA/T's argument, CA/T's contractual right to control the interim funding through adjustments or deductions against future payments distinguishes the provisional character of the payments here from installment payments on a judgment or payments into a registry of a court, which, in the cases upon which CA/T relies, stopped the accrual of interest. See, e.g., *Bogosian* v. *Woloohojian*, 158 F.3d 1, 9 (1st Cir. 1998) (defendant's payment into court's registry stopped running of interest for amount paid, as defendant "completely gave up control of the money"); *Illini FS, Inc.* v. *Myerscough*, 137 Ill. App. 3d 861, 863-864 (1985) (judgment debtor made installment payments that judgment creditor agreed to apply to judgment).

We conclude that CA/T could satisfy the awards, and stop the accrual of postaward interest, by converting the interim funding already paid to PKC to final payment through allocation or, as the judge reasoned, by paying PKC with new monies that were free of all contractual constraints. Until CA/T paid PKC in such a manner, in sums sufficient to pay the awards, together with postaward interest, postaward interest would continue to run.

b. *Equitable considerations and public policy.* CA/T also asks that, as part of our review, we consider the equities of postaward interest, stressing that PKC suffered no loss of the use of the money pending the outcome of arbitration, since it had full use of the interim funding throughout the proceedings. We note, first, that the equitable considerations referenced in

*Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. at 717-718, applied to interest awarded by a judge, not by the arbitrator, on an arbitration award. "Interest included as part of the arbitrator's award must therefore be distinguished from interest added by a court pursuant to an award which is silent on the point." *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. at 472. Vacation of arbitration awards is limited by statute to the factors set forth in G. L. c. 251, § 12; equitable considerations are not among them. See *Massachusetts Hy. Dept.* v. *American Fedn. of State, City & Mun. Employees*, 420 Mass. 13, 16 (1995) ("Massachusetts cases vacating an arbitrator's award on public policy grounds have addressed awards which directly conflicted with a statutory limit on, or delegation of power"). See also *Dadak* v. *Commerce Ins. Co.*, 53 Mass. App. Ct. at 305-306 (arbitrator's damages award are not reviewed for fairness); *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 67 Mass. App. Ct. at 705-706, quoting from *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003) (" 'The courts are not authorized to reconsider the merits of an award even though' it is wrong on the facts and the law, no matter if it is a wise or foolish decision").

Nonetheless, CA/T maintains that its position as a public entity requires that we take into account the equities of the arbitrator's award as a matter of public policy. CA/T reasons that, because the purpose of interest is to compensate for loss of use of money, and since PKC had the use of the interim funding pending the outcome of the dispute, the award of postaward interest in these circumstances serves only to penalize CA/T, rather than to compensate PKC for any loss.[9] This, according to CA/T, offends public policy because, when imposed against a public entity, it serves only to punish the taxpayers.

In support of its argument, CA/T points to *M. O'Connor Contr., Inc.* v. *Brockton*, 61 Mass. App. Ct. 278, 285 (2004), a case that this court described as "one of those rare cases where an arbitration award must be vacated on the ground that it offends public policy." In that case, we vacated an arbitration

---

[9]Before the DRB, PKC disputed CA/T's argument that PKC suffered no loss of use of funds, claiming that its costs far exceeded the amounts it received in interim funding.

award based on an erroneous application of G. L. c. 93A to the defendant city's conduct in performing a governmental function, observing that, "[c]ompounding our public policy concerns, the award was one for punitive damages — a form of relief particularly disfavored when assessed against a public entity" (footnote omitted). *Ibid.*

This case is very different.[10] Even assuming, without deciding, that the interim funding was sufficient to cover PKC's costs pending resolution of its claims, postaward interest may be awarded against public entities not only to compensate for loss of use, but also to encourage timely compliance with the order. See *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. at 717-718. Recognizing that imposition of postaward interest furthers the purposes of arbitration, the Supreme Judicial Court explained in *Marlborough Firefighters, Local 1714* v. *Marlborough*, 375 Mass. 593, 601 n.7 (1978), quoting from *Lundgren* v. *Freeman*, 307 F.2d 104, 112 (9th Cir. 1962), that "[i]t should be the rule, rather than the exception, that when arbitrators hand down an award the parties will comply with it, without the necessity of court proceedings, just as it is (or should be) the normal or usual result that parties comply with a judgment, without the necessity of resort to process or appeal."

We regard the strong public policy favoring arbitration and timely compliance with arbitration awards as more significant than the concerns raised by CA/T with respect to its status as a public entity. Whether public or private, "[a]bsent contrary statutory direction, the strong public policy in favor of arbitration of commercial disputes should be given effect." *Minton Constr. Corp.* v. *Commonwealth*, 397 Mass. 879, 880 (1986). See *Commonwealth* v. *Philip Morris*, 448 Mass. 836, 844 (2007). "The policy of limited judicial review is reflective of the strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1007. See

---

[10]Indeed, awards that "so offend public policy that they should be set aside are not readily to be found." *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604 n.4 (2000), quoting from *Delta Air Lines, Inc.* v. *Air Line Pilots Assn., Intl.*, 861 F.2d 665, 670 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989).

*Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604 (2000). In our view, CA/T has not identified "a well defined and dominant public policy, ascertained from laws and legal precedents," that is offended by the award of postaward interest in this case. *Massachusetts Hy. Dept.* v. *American Fedn. of State, City & Mun. Employees, Council 93*, 420 Mass. at 20.[11]

c. *Sovereign immunity.* CA/T also raised before the motion judge the defense of sovereign immunity, arguing that it did not consent to pay postaward interest as part of an arbitration award. We find no support for this contention.

CA/T correctly points out that "[s]overeign immunity prohibits liability against the 'Commonwealth [and] . . . its instrumentalities . . . except with [the Commonwealth's] consent, and, when that consent is granted . . . only in the manner and to the extent expressed . . . by statute." *Todino* v. *Wellfleet*, 448 Mass. 234, 238 (2007), quoting from *DeRoche* v. *Massachusetts Commn. Against Discrimination*, 447 Mass. 1, 12 (2006). See *Boxford* v. *Massachusetts Hy. Dept.*, 458 Mass. 596, 601-602 (2010). The present matter, however, concerns rights and obligations undertaken by CA/T pursuant to contract, and "[t]he Commonwealth long ago waived its sovereign immunity against actions brought to enforce obligations it assumed through contracts." *Minton Constr. Corp.* v. *Commonwealth*, 397 Mass. at 880. See *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156-157 (1983). CA/T consented to be sued for obligations it assumed pursuant to the construction contract, and it also consented to be bound by the DRB's resolution of the claims involved here, pursuant to the 1999 agreement.[12] "As a result, the Commonwealth will be held answerable 'exactly as though it were a

---

[11]CA/T additionally argues, as an equitable consideration, that the provisional character of the interim funding was a red herring because CA/T never actually sought a downward adjustment in funding already advanced under Mod 507. The fact that CA/T retained the contractual right to do so undercuts its argument that interim funding was the equivalent, for PKC's purposes, of final payment. CA/T also argues in passing that failure to credit the interim funding as final payment, in accordance with the parties' contract, amounts to treating the interim funding as a gift, which is prohibited as a matter of public policy. This argument is not sufficiently articulated in CA/T's brief to warrant discussion.

[12]Relying on *Snaxin, Inc.* v. *Underground Storage Tank Petroleum Cleanup*

private individual.' " *Minton Constr. Corp.* v. *Commonwealth, supra,* quoting from *Nash* v. *Commonwealth,* 174 Mass. 335, 339 (1899).

Moreover, once CA/T agreed to arbitrate the disputed claims, the arbitration statute does not differentiate between public and private entities for purposes of our review. "The Legislature has identified the extremely limited grounds on which courts may vacate or modify arbitration awards, and it has not, in those statutory provisions, drawn any distinction between public and private sector arbitration." *Lynn* v. *Thomas,* 435 Mass. at 62 n.13. In the absence of limiting statutory directive, CA/T's contractual obligation to be bound by the DRB's resolution of these claims should be given effect, regardless of CA/T's status as a public entity. See *Minton Constr. Corp.* v. *Commonwealth,* 397 Mass. at 880.

In our review to determine whether the DRB acted within its authority, we note in particular the parties' 1999 agreement to arbitrate "any and all disputes." The law is clear that when a party has agreed to refer any and all disputes to arbitration, a party's specific consent to a particular remedy is not necessary. "[A]rbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies." *Superadio Ltd. Partnership* v. *Winstar Radio Prods., LLC,* 446 Mass. 330, 339 (2006), quoting from *Advanced Micro Devices, Inc.* v. *Intel Corp.,* 9 Cal. 4th 362, 367, 376 (1994). (discovery sanction ordered by arbitrator upheld under broad arbitration clause; specific consent not necessary to bind parties). See *Drywall Sys., Inc.* v. *ZVI Constr. Co.,* 435 Mass. 664, 669-671 (2002) (arbitration clause deemed sufficiently broad to permit the arbitrator to award multiple damages, even though multiple damages were not specifically authorized). We think this holds true whether the parties to the arbitration agreement are public or private.

In the context of interest on damage awards imposed against

---

*Fund Admin. Review Bd.,* 62 Mass. App. Ct. 224, 227 (2004), CA/T argues that even when the Commonwealth has consented to an obligation, "it will not be held liable for interest absent specific statutory authorization." However, in that case, this court expressly noted the absence of a contractual relationship. *Id.* at 226.

public employers, "[r]ecent cases have recognized an implicit waiver of sovereign immunity with respect to interest when the Legislature has expressed an intent to provide complete relief by giving broad delegation to agencies." *Todino* v. *Wellfleet*, 448 Mass. at 240 (referencing statutory authority afforded Labor Relations Commission and Massachusetts Commission Against Discrimination to fashion remedies).[13] See generally *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997), quoting from *C & M Constr. Co.* v. *Commonwealth*, 390 Mass. 390, 392 (1985) ("[I]mmunity is still in effect unless consent to suit has been 'expressed by the terms of a statute, or appears by necessary implication from them' "). By the same token, in light of the broad authority given to the DRB in the parties' 1999 agreement, and the narrow scope of review provided by the Legislature in G. L. c. 151, § 12, we believe that CA/T's waiver of sovereign immunity to arbitrate these claims included an implicit waiver of immunity from paying interest as part of the relief to be granted by the DRB. CA/T has not persuaded us that its explicit consent to pay postaward interest as part of the arbitration award was necessary to waive sovereign immunity in these circumstances.

d. *General Laws c. 30, § 39G.* CA/T further argues that, by incorporating G. L. c. 30, § 39G, into the parties' construction contract, CA/T indicated its consent to pay penalty interest only pursuant to that statutory payment scheme, and no other. However, § 39G does not, by its terms, control interest owed on disputed amounts awarded in dispute resolution proceedings. In *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141, 146-147 (1980), we explained that the policy objective of the penalty interest provisions in c. 30, § 39G, is to promote a public agency's prompt payment of *undisputed* amounts; we determined that those provisions did not apply to a contract

---

[13]The court in *Todino* went on to explain: "While G. L. c. 150E, § 11, does not expressly provide for interest, an award of interest on any money paid in connection with the commission's order, arises by necessary implication from the terms of § 11. . . . An award of interest on monetary relief is a necessary remedial component of the statute. A contrary rule would deprive the affected employee of a make-whole remedy, and might also have a deleterious effect on the settlement of cases and encourage delay in securing compliance with G. L. c. 150E." *Todino* v. *Wellfleet*, 448 Mass. at 240, quoting from *Brookfield* v. *Labor Relations Commn.*, 443 Mass. 315, 325-326 (2005).

action in which *disputed* amounts were resolved by litigation. Therefore, incorporation of § 39G into the parties' 1995 construction contract, as the procedure intended to expedite payments on undisputed amounts, did not limit the scope of CA/T's 1999 consent to arbitrate any and all disputes, including the claims here. The 1999 agreement expressly superseded or supplemented the dispute resolution provisions of the construction contract as to these disputed claims, and it is not reasonable, as a matter either of contract interpretation or the strong public policy favoring arbitration, to construe the reference to § 39G in the construction contract as limiting the DRB's authority to award postaward interest on disputed claims.[14]

e. *Compound interest.* In DRB orders 11A and 16, the arbitrator awarded postaward interest at nine percent, compounded annually. The judge, citing both equitable and statutory grounds, substituted the statutory rate of interest in G. L. c. 30, § 39G, as the only postaward rate the DRB was authorized by law to impose in the equitable adjustment context and as the rate that would have applied had the parties not disputed the claims. As previously discussed, we do not consider the parties' incorporation of G. L. c. 30, § 39G, into the construction contract, for undisputed claims, as applicable to the interest rate awarded here in the context of a dispute resolution. Moreover, any correlation between the procedure set out in G. L. c. 30, § 39G, governing late payment of undisputed amounts, and the late payment of an arbitration award resolving disputed claims, is too remote to render the interest provisions of the former controlling of the latter. See *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. at 146-147.

Accordingly, we see no basis, in law or equity, for the interest rate set out in c. 30, § 39G, or the prohibition against interest on interest therein, to curtail the DRB's authority to set the interest rate or to award compound interest on disputed amounts resolved by arbitration. See generally *Bureau of Special Investi-*

---

[14]CA/T also argues, by way of footnote in its brief, that if we uphold the award of postaward interest, the appropriate rate to impose in a controversy involving a public works contract is that set forth in G. L. c. 231, § 6I. Again, in accordance with *Blue Hills Regional Dist. School Comm.* v. *Flight*, 10 Mass. App. Ct. at 472, the award of interest by the DRB as part of its award was not dictated by the laws applicable to judicial proceedings.

*gations* v. *Coalition of Pub. Safety*, 430 Mass. at 604 (vacation of arbitration award may be allowed where award directly conflicts with statutory provisions). As noted, we think that the policy objectives of the c. 30, § 39G, payment scheme lose effect once the parties resort to arbitration and legal proceedings to resolve payment of disputed claims, and in those circumstances, the interest provisions of § 39G are no longer controlling. See *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. at 146-147. See generally *Marlborough Firefighters, Local 1714* v. *Marlborough*, 375 Mass at 601 n.7. Therefore, where amounts owed to PKC could not be resolved without the necessity of arbitration, resolution by the DRB of disputed amounts was not controlled by c. 30, § 39G, and the DRB's award of postaward interest at nine percent, compounded annually, was not directly contrary to controlling law.

f. *Prejudgment interest.* As a final matter, CA/T appeals from the judge's addition of prejudgment interest to the awards. Under *Connecticut Valley Sanitary Waste Disposal, Inc.* v. *Zelenski*, 436 Mass. 263, 270-271 (2002), prejudgment interest is to be added on the entire amount of the arbitration award, which includes principal as well as interest awarded by the arbitrator. See *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. 529, 533-534 (2003). In accordance with *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. at 472, the DRB's award of postaward interest was an integral part of the remedy ordered and, together with the award, formed the basis of the judgment. There was no error.

Based on the foregoing, the judgment is modified to allow the award of interest by the method and at the rates ordered by the arbitrator. As so modified, the judgment is affirmed.

*So ordered.*